OPINION
{¶ 1} Appellant Debra Zweber (hereinafter "Debra") appeals the July 26, 2005 judgment of the Mercer County Court of Common Pleas, Juvenile Division, which found her in contempt for violating the terms of its visitation order. The visitation order involves eight-year-old Kaeli Stevenson (hereinafter "Kaeli"), who tragically suffers from cerebral palsy and is blind and severely handicapped as a result.
 {¶ 2} Kaeli's mother, Heather Dawn Jackson (hereinafter "Heather"), died in an auto accident on March 31, 2004. In addition to Kaeli, Heather was survived by her husband, Scott Jackson (hereinafter "Scott"); her three-year-old son, Skyy Jackson (hereinafter "Skyy"); her brother-in-law, Jeffrey Zweber (hereinafter "Jeffrey"); and her sister, Debra. Scott is Kaeli's step-father, and Skyy is Kaeli's half-brother.
 {¶ 3} On April 8, 2004, Debra and Jeffrey filed a complaint in the juvenile court seeking permanent residential parent status over Kaeli. In opposition, Scott filed a motion in the juvenile court which requested the same.[1] On October 4, 2004, the juvenile court issued a judgment entry granting Debra and Jeffrey permanent residential parent status. The judgment entry also granted Skyy the right to visit Kaeli on specific dates.
 {¶ 4} On October 22, 2004, Skyy, by and through Scott, filed a contempt citation in the juvenile court. In the citation, Skyy alleged Debra and Jeffrey violated the terms of the visitation schedule when they refused to allow Kaeli to stay with Skyy during a designated weekend visit. Notably, Debra and Jeffrey did not allow Kaeli to visit Skyy on two other occasions.
 {¶ 5} Although the juvenile court scheduled a contempt hearing for November 12, 2004, it later continued the hearing to January 7, 2005. Following the continuance, Debra and Jeffrey filed a petition to adopt Kaeli in the Green County Court of Common Pleas, Probate Division. The probate court granted the petition and entered a final decree of adoption on December 20, 2004.
 {¶ 6} Shortly thereafter, Debra and Jeffrey filed in the Mercer County Juvenile Court a motion to dismiss the contempt proceeding contending that the adoption divested the juvenile court of jurisdiction to hear the matter. The juvenile court concluded that it retained jurisdiction over the contempt proceeding despite the adoption.
 {¶ 7} The juvenile court subsequently held a contempt hearing, and on July 26, 2005, the juvenile court found Debra and Jeffrey to be in contempt. In its judgment entry, the juvenile court provided that Debra and Jeffrey could purge themselves of contempt if they made up the missed visitation time.
 {¶ 8} It is from this decision that Debra appeals and sets forth three assignments of error for our review.[2] For purposes of clarity, we consider Debra's first and third assignments of error together.
 ASSIGNMENT OF ERROR NO. 1 The Lower Court erred in failing to grant petitioner Zweber'smotion to dismiss for want of jurisdiction after the minor child,Kaeli M. Stevenson, was adopted.
 ASSIGNMENT OF ERROR NO. 3 The Lower Court erred as the sanctions applied by the TrialCourt are unreasonable and contrary to statute.
 {¶ 9} In her first assignment of error, Debra argues R.C.3107.15(A) supports her contention that the adoption divested the juvenile court of jurisdiction to continue with the contempt proceeding. From this premise, Debra argues in her third assignment of error that the juvenile court erred in requiring her to avoid a finding of contempt by making up the missed visitations. For the reasons that follow, we find Debra's first and third assignments of error lack merit.
 {¶ 10} R.C. 3107.15(A) provides that a final decree of adoption terminates all parental rights of biological parents and creates new parental rights in adoptive parents. State ex rel.Kaylor v. Bruening (1997), 80 Ohio St.3d 142, 145,684 N.E.2d 1228, citing State ex rel. Smith v. Smith (1996),75 Ohio St.3d 418, 419, 662 N.E.2d 366; In re Adoption of Greer (1994),70 Ohio St.3d 293, 298, 638 N.E.2d 999. More specifically, R.C.3107.15(A) provides in pertinent part:
(A) A final decree of adoption * * * shall have the followingeffects as to all matters within the jurisdiction or before acourt of this state * * *:
 (1) Except with respect to a spouse of the petitioner andrelatives of the spouse, to relieve the biological or other legalparents of the adopted person of all parental rights andresponsibilities, and to terminate all legal relationshipsbetween the adopted person and the adopted person's relatives,including the adopted person's biological or other legal parents,so that the adopted person thereafter is a stranger to theadopted person's former relatives for all purposes * * *; [and]
 (2) To create the relationship of parent and child betweenpetitioner and the adopted person, as if the adopted person werea legitimate blood descendant of the petitioner, for all purposes* * *.
 {¶ 11} The Supreme Court of Ohio has held that R.C.3107.15(A) operates prospectively. Thus, a final decree of adoption does not relieve a prior spouse of all past-due child support arrearages not reduced to judgment before an adoption.Bercaw v. Bercaw (1989), 45 Ohio St.3d 160, 160-161,543 N.E.2d 1197. Similarly, the Supreme Court of Ohio has also construed R.C. 3107.15(A) to deprive courts of jurisdiction and statutory authority to grant visitation rights to an adopted party's relatives only after the adoption has occurred. Kaylor,80 Ohio St.3d at 146, citing Sweeney v. Sweeney (1994),71 Ohio St.3d 169, 170, 642 N.E.2d 629.
 {¶ 12} In the case sub judice, the juvenile court issued the judgment entry granting Skyy the right to visit Kaeli months before the probate court entered its final decree of adoption. Moreover, Debra violated the terms of the visitation schedule, and Skyy initiated the contempt proceeding, well before the probate court granted the adoption. Since all the events leading to the contempt proceeding occurred before the adoption ever transpired, the fact that the juvenile court did not find Debra in contempt until after the adoption is inconsequential.
 {¶ 13} Additionally, contempt proceedings serve to further a variety of interests, including securing the dignity of the courts and ensuring the courts' authority and proper functioning.Denovcheck v. Trumbull County Commrs. (1988), 36 Ohio St.3d 14,15-16, 520 N.E.2d 1362, quoting Windam Bank v. Tomaszczyk
(1971), 27 Ohio St.2d 55, 271 N.E.2d 815, paragraph two of the syllabus; see, also, Geizer Durst v. Durst, 3d Dist. No. 13-02-38, 2003-Ohio-2029, at ¶ 17 ("Civil contempt sanctions are designed for remedial or coercive purposes and are often employed to compel obedience to a court order.") However, construing R.C.3107.15(A) to divest the juvenile court of jurisdiction to address multiple violations of a visitation schedule established before the adoption would undoubtedly impede those interests which contempt proceedings are designed to further.
 {¶ 14} For the foregoing reasons, we are unable to say R.C.3107.15(A) supports the contention that the adoption divested the juvenile court of jurisdiction to continue with the contempt proceeding.
 {¶ 15} Having determined the juvenile court did not lack jurisdiction, we next consider Debra's argument that the juvenile court erred in requiring her to avoid a finding of contempt by making up the missed visitations. In particular, Debra argues the juvenile court may not order her to make up those visitations because she is Kaeli's adoptive parent under R.C. 3107.15(A).
 {¶ 16} The juvenile court expressly noted in the July 26, 2005 judgment entry that Debra "may" purge herself of contempt. Notably, the juvenile court did not require that Debra do so. Rather, the juvenile court presented Debra with a choice: make up the missed visitations or face a sanction.
 {¶ 17} Although Debra is Kaeli's adoptive parent under R.C.3107.15(A), we find no basis to conclude that the trial court erred in providing Debra the option to purge herself of contempt. In fact, our precedent makes clear that Ohio law required as much. See Geiser Durst, 2003-Ohio-2029, at ¶ 17-19; see, also,In re Purola (1991), 73 Ohio App.3d 306, 312, 596 N.E.2d 1140;Fry v. Fry (1989), 64 Ohio App.3d 519, 523, 582 N.E.2d 11;Tucker v. Tucker (1983), 10 Ohio App.3d 251, 461 N.E.2d 1337, paragraph three of the syllabus. We further find the choice presented to Debra to be consistent with the need to compel obedience to a court order, necessary to remedy Debra's actions, and generally appropriate under the facts of this case.
 {¶ 18} Accordingly, Debra's first and third assignments of error are overruled.
 ASSIGNMENT OF ERROR NO. 2 The Lower Court erred as the minor child, Skyy Jackson, lacksstanding either through himself or his next friend to enforce anyorder for himself.
 {¶ 19} In her second assignment of error, Debra argues the juvenile court erred when it granted Skyy the right to visit Kaeli. Specifically, Debra argues the juvenile court erred when it granted Skyy visitation rights under R.C. 3109.11 because Skyy did not maintain an interest in Kaeli's welfare as contemplated by R.C. 3109.051(B)(1)(b).
 {¶ 20} Debra's argument challenges the validity of the October 4, 2004 judgment entry and not the July 26, 2005 judgment entry from which she appealed. Furthermore, the record reflects Debra failed to raise the issue in the juvenile court. An appellant that fails to bring a claimed error to the attention of the trial court cannot attempt to address that error for the first time on appeal. Atkinson v. Grumman Ohio Corp. (1988),37 Ohio St.3d 80, 82, 523 N.E.2d 851. Consequently, we find Debra waived her challenge to the juvenile court's decision to grant Skyy the right to visit Kaeli.
 {¶ 21} Having found no error prejudicial to the appellant herein, in the particulars assigned and argued, we affirm the judgment of the trial court.
Judgment Affirmed.
 Rogers and Shaw, J.J., concur.
[1] The juvenile court granted Debra and Jeffrey temporary residential parent status during the pendency of the permanent residential parent status contest.
[2] The juvenile court found both Debra and Jeffrey in contempt for violating the terms of the visitation schedule. However, Jeffrey did not appeal the juvenile court's July 26, 2005 judgment entry, and the record includes only Debra's August 23, 2005 notice of appeal. Thus, we consider the propriety of the juvenile court's judgment as it pertains to Debra alone.